IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY GOWTON,<br><br>  Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY; and STATE FARM INSURANCE COMPANIES,<br><br>  Defendants. | Civil Action No.: 2:15-cv-01164-CB<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

AND NOW, comes the Plaintiff, Randy Gowton, by and through his Counsel, Randall G. Klimchock, Esquire, and files this Amended Complaint, and in support thereof alleges and avers as follows:

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. Sections 1332 and 1441. Plaintiff originally filed this action in State Court in Fayette County, Pennsylvania. Defendants removed this case to this Honorable Court.

## COUNT 1 OF 1- BAD FAITH

2. Plaintiff is Randy Gowton, whose address is 400 Bridgeport Road, Mount Pleasant, PA 15666.

1

3.      The Defendants, State Farm Fire and Casualty Company and State Farm Insurance Companies, have as their address 1 State Farm Plaza, Bloomington, IL 61701.

4.      On or about March 22, 2011, and at all times pertinent hereto, the Plaintiff had in place a Homeowner's Insurance Policy whereby the Plaintiff was the insured, and the Defendants were the insurer.  The Policy insured Plaintiff for losses, among other things, incurred from fire at his home located at 155 Hammondville Street, Mount Pleasant, Pennsylvania, 15666.  The Policy Number is 38-PT-9631-0.  A true and correct copy of said insurance policy is attached hereto and made a part hereof as Exhibit "A".

5.      The Plaintiff has owned the real estate located at 155 Hammondville Street, Mount Pleasant, Pennsylvania, 15666, at all relevant times from March 22, 2011 to the present. The said property is located in Bullskin Township, Fayette County, Pennsylvania.

6.      On or about March 22, 2011, the Plaintiff's said property in Bullskin Township was severely damaged by fire.

7.      The aforesaid Insurance Policy provided coverage for fire damage to the dwelling in the amount of $190,733.00.

8.      The structure, the residence dwelling of Plaintiff and his children, was a total loss.

9. Immediately after the said fire in March, 2011 the Plaintiff notified the Defendants of the loss and made proper application for real property and personal property loss. However, the Defendants only paid the amount of $112,694.35 for damage to the dwelling.

10. The insurance contract at issue in this case provides that Defendants shall pay only the "actual cash value" at the outset, and then shall pay the additional amount actually incurred only upon the completion of repairs and replacement. Please see Exhibit "A", page 11.

11. It appears that Defendants calculated its aforesaid "actual cash value" dwelling loss payment of $112,694.50, by using a replacement cost of $187,874.50, minus a depreciation cost of $75,180.15.  Attached hereto and made a part hereof as Exhibit "B" is a data sheet that the Defendants provided to Plaintiff, which contains the Defendants' said calculation.

12.  Defendants' calculation of actual cash value bears no reasonable relationship to Plaintiff's actual loss with regard to the dwelling, and thus constitutes bad faith, as follows.

13. The true "replacement cost" of the destroyed dwelling structure is $293,911.80, as set forth in the Contract Proposal by Custom Construction & Remodeling, a true and correct copy of which is attached hereto and made a part hereof as Exhibit"C". The Defendants' replacement cost used in their calculation, $187,874.50, is more than $100,000.00 lower than the true replacement cost price quotation obtained by Plaintiff pursuant to the open market. As such, it bears no reasonable relationship to Plaintiff's true replacement cost.

14. Moreover, the Defendants simply applied a flat rate of 40% of their assumed replacement cost, in arriving at their depreciation costs. Please see Exhibit "B". ($62,650.13 line item depreciation + 12,530.02 contractor depreciation= $75,180.15, divided by $187,874.50 replacement cost, =40%). This unilaterally selected rate bears no reasonable relationship to actual depreciation. Just picking such a percentage out of the air, and a high percentage at that, constitutes bad faith.

15. When Plaintiff was paid $112,694.35 by Defendants, the funds were made payable to Plaintiff and to Plaintiff's Mortgagee, Bank of America Corporation. The said Bank of America retained approximately $55,000.00 of these proceeds to satisfy Plaintiff's Mortgage on the subject property. This severely limited Plaintiff's ability to complete the replacement of his dwelling, due to lack of remaining funds after the mortgage company was paid.

16. In or about the Autumn of 2011, Plaintiff had reached an agreement with the Insurance Adjuster who was handling his claim at the time. The said Adjuster was employed by and acting as an authorized agent or representative for Defendants. Plaintiff believes that the Adjuster's name is John Connelly. The agreement was that the Plaintiff was to have a foundation laid for a double wide mobile home, and then have his contractor provide and install a double-wide mobile home on the foundation which Plaintiff had caused to be laid. When the said installation was complete, the Defendants were to pay the contractor directly for the procurement and installation of the said double-wide mobile home.

17. Notwithstanding the Agreement between Plaintiff and Defendants through their authorized representative, at the time for installation of the double-wide mobile home, the Defendants advised Plaintiff that they would no longer honor their Agreement and would not pay the contractor, thus cancelling the installation of the aforesaid double-wide mobile home.

18. Based on Defendants' said representations, the Plaintiff did in fact have a foundation laid for a double wide mobile, at a cost to Plaintiff of approximately 15,000.00.

19. Due to Defendants causing the mobile home installation to be cancelled, the foundation which the Plaintiff had caused to be laid was damaged from a too-long exposure to the weather elements.

20. Additionally, if Plaintiff had not been induced to spend the amount of $15,000.00 laying a foundation which ended up being worthless, he may have been able to apply that amount to his house rebuild, and thus possibly could have obtained the additional amounts he would have been entitled to under the policy upon completion of repairs or replacements.

21. The conduct of the Defendants in making an actual cost payment which bears no reasonable relationship to Plaintiff's actual losses, and in inducing Plaintiff to expend his extremely limited insurance funds in laying a useless foundation, constitute bad faith by the Defendants toward the Plaintiff.

WHEREFORE, the Plaintiff, Randy Gowton, respectfully requests that the Honorable Court take the following actions pursuant to 42 Pa.C.S.§8371:

1. Award Plaintiff $15,000.00 in damages incurred in laying the aforesaid foundation;

2. Award Interest on the said amount, at a rate equal to the prime rate plus 3%;

3. Award punitive damages against the Defendant;

4. Assess Attorney Fees against the Defendant;

5. Assess Court Costs against the Defendant.

Dated: July 8, 2016                                  Respectfully Submitted,

/s/ Randall G. Klimchock
Randall G. Klimchock, Esquire
101 North Church Street
Mount Pleasant, PA 15666
Telephone: (724) 542-4514
Facsimile: (724) 542-4517
PA I.D. No. 58306

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **Amended Complaint** was served via the Court's CM/ECF system and U.S. Mail, on this 8th day of July, 2016 upon the following:

Ansley S. Westbrook, II, Esquire
John J. Berry, Esquire
Dinsmore & Shohl, LLP
One Oxford Centre-28th Floor
301 Grant Street
Pittsburgh, PA 15219

/s/ Randall G. Klimchock
Randall G. Klimchock, Esquire