IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY GOWTON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 15-1164 |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY; and STATE FARM INSURANCE ) | |
| COMPANIES, ) | Judge Cathy Bissoon |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MEMORANDUM & ORDER

### I. MEMORANDUM

This matter is before the Court upon a Motion to Dismiss filed by Defendant State Farm Fire and Casualty Co. ("State Farm") (Doc. 12). For the reasons that follow, State Farm's Motion will be granted.

### BACKGROUND

On March 22, 2011, Plaintiff Randy Gowton's ("Gowton") home sustained extensive fire damage. Am. Compl. (ECF No. 11) ¶ 6. At the time, Gowton's property was insured by State Farm pursuant to Homeowner's Insurance Policy Number 38-PT-9631-0 ("Policy"). Id. ¶ 4. The Policy provided for fire damage coverage in the amount of $190,733.00. Id. ¶ 7. Pursuant to the policy, State Farm was obligated to provide "actual cash value benefits" based on the estimated cost to repair or replace the property, less the cost of calculable depreciation and estimated contractor overhead and profit. Id. ¶ 11; State Farm Policy (ECF No. 11-1).

Gowton promptly notified State Farm of the damage and submitted a claim for the replacement cost of the destroyed structure. Id. ¶¶ 9, 13. Based on an estimate that he obtained

from a company known as Custom Construction & Remodeling, Gowton requested a replacement cost benefit of $293,911.80.  Id. ¶ 13; Contract Proposal (ECF No. 11-3).  State Farm, after performing its own inspection, provided only $112,694.50.  Id. ¶ 11.  State Farm arrived at this amount by calculating an estimated replacement cost of $187,874.50 and subtracting a depreciation cost of $75,180.15.  Id.; see State Farm Estimate (ECF No. 11-2).

State Farm, to date, has only paid $112,694.35 for the damage to the residence.  Id. ¶14.  Gowton contends that State Farm's assessment is inaccurate, understated and "bears no reasonable relationship to Plaintiff's true replacement cost."  Id. ¶¶ 13-14.  Gowton is seeking to recover the difference between the Policy's limits and the amount actually paid by State Farm.

**ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

Gowton's Amended Complaint asserts a single claim of bad faith.[1]  To establish a bad faith claim in Pennsylvania, "a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim."  Post v. St. Paul Travelers Ins., 691 F.3d 500, 522-23 (3d Cir. 2012) (internal quotations omitted).  For purposes

---

[1] This Court previously dismissed Gowton's breach of contract claims, with prejudice, based on the applicable statute of limitations.  ECF No. 10.

2

of an action against an insurer for failing to pay a claim, "such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing) through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Id. at 523 (quotations omitted).

In his original Complaint, Gowton broadly alleged that "[t]he conduct of the Defendants in refusing to pay the additional amounts due on the Plaintiff's claim under the Policy, constitute bad faith by the Defendants toward the Plaintiff." Compl. (ECF No. 1-2) ¶ 40. He suggested that State Farm had relied on unsupportable loss calculations, but did not explain how or why those calculations were inadequate. Id. ¶¶ 15, 19. Because "[c]onclusory or bare-bones allegations [of bad faith] will not survive a Motion to Dismiss," this Court dismissed Gowton's bad faith claim for lack of specificity. See Memorandum and Order (ECF No. 10) at 5 (quoting Liberty Ins. Co. v. PGT Trucking, Inc., 2011 WL 2552531, at *4 (W.D. Pa. Jun. 27, 2011) (internal quotations omitted)). The Court instructed Gowton to cure his pleading deficiencies by filing an amended complaint containing sufficient factual detail to support his claim. Id. at 5-6.

In his Amended Complaint, Gowton clarifies that his bad faith claim is based entirely on the difference between the repair estimate that he independently obtained and State Farm's much lower repair estimate. Am. Compl. ¶¶ 12-13. Gowton explains that State Farm's estimate "bears no reasonable relationship to [his] actual loss" because it "is more than $100,000.00 lower than the true replacement cost price quotation obtained by Plaintiff pursuant to the open market." Id. ¶ 13. He also avers that State Farm used a depreciation percentage that it "pick[ed] . . . out of the air" in determining how much depreciation to factor into his ultimate payment benefit. Id. ¶ 14. No other facts bearing on the accuracy of State Farm's estimate are provided.

3

A similar scenario was recently addressed in Seto v. State Farm Ins. Co., 855 F. Supp.2d 424, 430 (W.D. Pa. 2012). In Seto, as in the instant case, the plaintiffs asserted that State Farm had failed to adequately reimburse them for damage to their home arising from a series of fires. Id. at 426-27. After being informed of the damage, State Farm conducted a prompt inspection, sent a damage estimate, and tendered payment in the amount of $116,321.67. Id. at 427. Plaintiffs engaged a private contractor and obtained a second damage estimate that was at least $50,000 higher than that supplied by State Farm. Id. Relying on their own estimate, plaintiffs alleged that State Farm had acted in bad faith by "low-balling" its valuations of numerous components of the destroyed home. Id. at 428.

The court began its analysis by acknowledging the well-established principle that "Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses." Id. at 430 (citing Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. 2004)). Rather, the insured must demonstrate that the insurer's estimate bore no reasonable relationship to the actual damage loss, either because the insurer "breached its duty of good faith through some motive of self-interest or ill-will" or because the insurer failed to "conduct[] a review or investigation sufficiently thorough to yield a reasonable foundation for its action." Id. at 431 (internal quotations and quoting sources omitted). The court concluded that the plaintiffs had failed to make this showing:

> Plaintiffs' argument fails for a number of reasons. First, after the first fire, State Farm immediately inspected the property, created an itemized estimate of damages, and promptly paid $116,321.67 to Plaintiffs. Then when State Farm received a higher estimate from a contractor hired by Plaintiffs, it agreed to review and consider that estimate. However, before State Farm could fully review and consider that estimate, a second fire occurred at the Setos' home.

> Because the second fire appeared to be incendiary, State Farm performed a two-month investigation. At the close of the investigation, State Farm paid an additional $43,635.02 to Plaintiffs for their dwelling. Thereafter, Plaintiffs submitted to State Farm a higher estimate from a contractor they hired. State Farm reviewed and considered the second estimate and issued a supplemental payment of $29,000.00.
>
> \* \* \* \* \* \* \* \*
>
> Based on the summary judgment record evidence, the Court finds that State Farm has demonstrated that it conducted an investigation sufficiently thorough to yield a reasonable foundation for its action. On the other hand, Plaintiffs have not demonstrated by clear and convincing evidence that State Farm had no reasonable basis for the amounts of the payments it made to Plaintiffs. A low, but reasonable offer, is simply not evidence of bad faith.

Id. at 431-32.

Similarly, in Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 682 (Pa. Super. 1994), the plaintiffs, a husband and wife, demanded $100,000 each from an insurance company to settle an uninsured motorist claim. Id. at 682. After conducting an investigation into the injuries claimed by the plaintiffs, the company offered $40,000 to one plaintiff and $17,500 to the other. Id. at 689. An arbitrator eventually awarded the plaintiffs $125,000 each. Id. at 682. Plaintiffs initiated a bad faith claim against the insurance company, asserting that the insurance company's "low settlement offers prior to the uninsured motorist arbitration were indicative of bad faith." Id. at 689. The court disagreed, noting that the insurance company had conducted a thorough and even-handed investigation and that the settlement offer, while significantly lower than the amount awarded at arbitration, had taken into account "many factors" including the medical records supporting the alleged injuries, the damages to the vehicles, the liabilities of the respective drivers and the lack of lost wages. Id. ("Prudential's initial settlement offers . . . had a reasonable basis. Accordingly, we conclude that the offers

5

were not indicative of bad faith."). Other courts in Pennsylvania have consistently reached the same conclusion. See also Smith v. State Farm Mut. Auto. Ins. Co., 506 Fed. Appx. 133, 136-37 (3d Cir. 2012) (noting that it is "not unusual" for parties to an insurance claim to disagree over the settlement amount but that "the failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith"); Great Lakes Reinsurance (U.K.) PLC v. Stephens Garden Creations, Inc., 119 F. Supp.3d 297, 305 n. 9 (E.D. Pa. 2015) ("an insurer's low but reasonable estimate does not evidence bad faith"); Rowe v. Nationwide Ins. Co., 6 F. Supp.3d 621, 630 (W.D. Pa. 2014) ("Plaintiffs have not produced clear and convincing evidence that Nationwide's offer lacked a reasonable basis. To the contrary, Nationwide has demonstrated that its investigation and its offer were reasonable and based on medical records, expert reports, and other relevant information.").

Similarly, Gowton has failed to allege any facts to suggest that State Farm's settlement offer lacked a reasonable basis or was not supported by a thorough and even-handed investigation. Seto, 855 F. Supp.2d at 430-31. Significantly, Gowton's response brief reiterates that he is not alleging that State Farm was dilatory, failed to communicate, performed an unsatisfactory or biased investigation or unreasonably delayed in considering his claim. See Rowe, 6 F. Supp.3d at 630 (bad faith arises from conduct such as "an unreasonable delay in handling claims; a frivolous or unfounded refusal to pay; a failure to communicate with the insured; acting in a dilatory manner; and settlement offers which bear no reasonable relationship to the insured's reasonable . . . expenses"). Rather, Gowton simply alleges that State Farm's estimate was *per se* unreasonable for no other reason than that it differed from his own:

> Gowton's alleged Replacement Cost of $293,911.80 differs enormously from State Farm's alleged Replacement Cost of $187,874.50. Without yet having been afforded the opportunity to conduct discovery, neither Gowton nor the Honorable Court can ascertain with any degree of

6

> accuracy whether there is any reasonable basis whatsoever for State
> Farm's alleged Replacement Cost.
>
> The same can be said for State Farm's alleged Depreciation which is
> factored into its loss payment calculation. 40% Depreciation sure is a
> nice round number, but why not 20%, or 60%? It appears to be an
> arbitrarily selected percentage. Again, Gowton has not even been
> afforded the opportunity to question State Farm, through discovery, as to
> the selection of this percentage amount. Was it a thorough and even-
> handed investigation by State Farm?

Pl. Resp. (ECF No. 14) at 3. In the absence of any supporting facts from which it might be inferred that the company's investigation was biased or unreasonable, this type of disagreement in an insurance case is "not unusual," and "cannot, without more, amount to bad faith." Smith, 506 Fed. Appx at 136-37; Sypeck v. State Farm Mut. Auto Ins. Co., 2012 WL 2239730, at *3 (M.D. Pa. Jun. 15, 2012) (dismissing a bad faith claim based entirely on the fact that the insurer's offer appeared unreasonably low because it was supported "almost entirely with conclusory allegations using boilerplate language").

This conclusion is bolstered by an examination of the exhibits referenced throughout Gowton's Amended Complaint. State Farm performed an initial inspection of the property only two days after the damage occurred and provided a detailed, 38-page estimate within a month thereafter. State Farm Estimate (ECF No. 12-3) at 3. State Farm's estimate contains a room-by-room assessment of the damage; detailed measurements; design drawings; materials analysis; and line by line estimates of the cost and depreciation of the construction materials necessary to rebuild the home. Id. at 5-38. This is precisely the type of thorough and adequate investigation that vitiates a claim of bad faith. Terletsky, 649 A.2d at 689 (defendant's low settlement offer was supported by a thorough investigation into the injuries and damages claimed by plaintiffs); Seto, 855 F. Supp.2d at 430-31 (defendant's low estimate was provided after "inspect[ing] the

property, creat[ing] an itemized estimate of damages," and considering a higher estimate provided by another contractor).

Despite being provided an opportunity to cure the pleading deficiencies in his original Complaint, Gowton still has failed to allege any facts suggesting that State Farm acted in bad faith.[2] This Court has previously cautioned that "[n]o further opportunity for amendment will be afforded." Memorandum and Order (ECF No. 10) at 5-6. Under the circumstances, a grant of State Farm's Motion to Dismiss is warranted, and the dismissal will be with prejudice.

Consistent with the foregoing, the Court hereby enters the following:

## II. ORDER

State Farm's Motion to Dismiss (**Doc. 12**) is **GRANTED**, and this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

March 2, 2017                   s/Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge

cc (via ECF email notification):

All counsel of record

---

[2] Two additional averments in the Amended Complaint can be quickly dismissed. First, Gowton complains that Bank of America withheld a portion of his benefit to satisfy his mortgage. Am. Compl. ¶ 15. This allegation does not appear to be directed at State Farm, the only defendant in this action. Secondly, Gowton contends that he reached an agreement with a State Farm adjuster to pay for the construction of a mobile home but that State Farm subsequently advised him that it "would no longer honor their Agreement and would not pay the contractor" who laid the foundation. Id. ¶¶ 16. This Court has already determined that contractual claims of this nature are barred by the applicable statute of limitations. ECF No. 10.